# COUNTY OF OXFORD.

## BENJAMIN PRATT *versus* POLLY CHURCHILL.

A., having an estate for life in certain premises, conveyed them by deed of warranty to B., who continued in possession over twenty years : — *Held,* that at common law the remainder man or reversioner, having no right to immediate possession, cannot lose his title by adverse possession, and that, during the continuance of the particular estate, he is not bound to enter to defeat a wrongful possession : — *Held,* that the statutory provisions are in accordance with the common law in this respect : —*Held,* that the estate of the tenant under the deed is an estate for life, and that he would not, by the common law, be entitled to compensation for any improvements.

To entitle a tenant to betterments under R. S. of 1841, c. 145, § 23, his possession must be open, notorious, exclusive and *adverse* for twenty years, and such as would, by disseizin, give him the fee.

Where the reversioner or remainder man has no right of entry or possession, the seizin of the tenant, while the particular estate continues, is not adverse.

The Act of March 6, 1844, c. 6, § 1, which provides that the tenant for years may recover betterments against the owners of the expectant estate, does not affect any made before the passage of the Act.

ON AGREED STATEMENT OF FACTS from *Nisi Prius.*

This was a writ of entry to recover possession of certain land.

The land declared for, being a part of the north half of lot numbered five, in Livermore, in the county of Oxford, is a part of the same land which was devised by one Othniel Pratt to his son Othniel Pratt, in and by his last will and testament, which was duly proved, approved, and allowed by the Court of Probate, February 27, 1810 ; and the said testator was seized of the same land and all the lands devised by said will at the time of his decease, which was January 7, 1810. The lands devised to said Othniel Pratt by the testator, consisted of about two hundred acres of land, with the buildings thereon, about one-half of which was cleared, situate in the town of Leeds, and was, at the time of the making

and approval of said will, occupied by said devisee as a farm; and the north half of lot number five, in Livermore, was about one mile distant from said farm, and the Androscoggin river passed between the same and the farm. The said north half of said lot number five, had not been entered upon or improved before the making of said will.

Othniel Pratt, the devisee in said will, died in January, 1851; but before his death, *to wit,* on the 25th day of March, 1812, he conveyed the north half of lot number five to Samuel and James Ames, their heirs and assigns, by deed of general warranty; and the said Ames', and their grantees, one of whom is the defendant, have been in the peaceable and undisturbed possession of the premises declared for, ever since. It is admitted, that the demandant is one of the legitimate children and heirs at law of the said devisee, and that he has purchased the interest of seven of the nine children, who were heirs at law of said devisee, and who had conveyed the same to him by deed duly recorded, before the bringing of the suit.

The tenant, and those under whom he claims, deriving their title from said Othniel Pratt, the devisee, have erected buildings and made other improvements upon the premises, which are now upon the premises.

It is agreed that, from the foregoing facts, the Court are to draw such inferences as the jury might, and are to determine the rights of the parties in the premises; and if, in the opinion of the Court, the plaintiff is entitled *to recover,* and the defendant is entitled to betterments, the action is to stand for trial that a jury may determine the same; but if the plaintiff is entitled to recover, and the defendant is not entitled to betterments, then the defendant is to be defaulted; and if the plaintiff is not entitled to recover, then he is to become nonsuit.

*H. W. Paine,* for defendant.

Two questions are raised by the agreed statement.

1. Is the action maintainable? According to the rule of Shelly's case, the words of the devise to Othniel Pratt, would carry a fee.

But this rule was abrogated by the statute of 1791, c. 60, which was in force when the will of Othniel Pratt, senior, was executed, and when it was established. *Bowers* v. *Porter,* 4 Pick. 198.

By force of this statute, Othniel, the devisee, took a life estate only.

A devise of wild lands to one without words of inheritance, has been held to carry a fee, because it will be presumed that the testator intended to give something of value. *Sargent & al.* v. *Towne,* 10 Mass. 303.

But as the statute is express, and as the language of the devise is clearly within the statute, the tenant will not contend that the fact that the land was in a state of nature, can have a controlling influence on the construction.

2. Is the tenant entitled to betterments?

By § 23, c. 145, R. S., it is provided, "that where the demanded premises have been in the actual and undisturbed possession of the tenant, or those under whom he claims, for six successive years or more, before commencement of the action, such tenant shall be allowed a compensation for the value of the buildings and improvements made by him, or those under whom he claims."

By the agreed statement, it appears that Othniel, the devisee, conveyed by deed of general warranty, March 25, 1812, to Samuel Ames and James Ames, to hold in fee simple; that they and their grantees, (one of whom is the tenant,) have been in the peaceable and undisturbed possession from that time to the date of the writ, March 5, 1852; and that the tenant, and those under whom she claims, have erected buildings and made other improvements.

The courts have found it necessary to restrain the general language of the statute, and have held that it was not intended to apply to those who enter under a title which they afterwards attempt to defeat, or under a contract with the owner to purchase. But it was held that a tenant who was in under a title proved to be defective, was entitled to the benefits of the statute. *Bacon* v. *Callendar,* 6 Mass. 303.

This tenant was in under a title which has been proved inferior to the demandants. Her case is, therefore, within the language of this section of the statute; and was such a case as, in the opinion of the Court, was intended to be reached and provided for.

But if it be possible to raise a doubt whether the tenant is entitled to have the benefits of this statute, there can be none, that she is within the sixth chapter of the statutes of 1843.

The action is brought by a remainder man, after the termination of a life estate, against the grantee by deed of and from a tenant for life.

These facts bring the case exactly within the terms of that enactment.

*Seth May*, for plaintiff.

It being conceded by the learned counsel for the defendant, that the rule in Shelley's case has been abrogated by the statute of Massachusetts, passed in 1791, c. 60, which was in force when the will of Othniel Pratt, senior, was executed, and approved and allowed, and which statute had received a construction in the case of *Bowers* v. *Porter*, 4 Pick. 198, and, as is believed, recently by our own Court, in a case arising in Kennebec county, under this same will; and it being further conceded, that the rule in the case of *Sargent & al.* v. *Towne*, 10 Mass. 303, does not apply in this case by reason of the statute, and the language of the devise being clearly within the statute; I will, after remarking that, by force of the language in the will, it is fully apparent that it was the testator's intention to devise these lands to be improved by the devisee so that he might enter and cut down the forest and cultivate the land without impeachment of waste, proceed directly to the consideration of the question of betterments which is raised in the case.

Is the defendant, then, entitled to betterments?

We contend that he is not. Until the statute of 1843, c. 6, we think there would have been no doubt about it. It seems to have been directly so settled in the case of *Varney* v. *Stevens*, 22 Maine, 331. In the case of *Austin* v. *Stevens*,

it is said by the counsel for demandant, that Stevens, after this decision, procured an Act of the Legislature to give him betterments, and that Act was the statute of 1843, as appears by the case of *Austin* v. *Stevens,* 24 Maine, 520.

In this last case, the purpose and effect of the Act of 1843 is pretty fully discussed.

In the case now before the Court, the will of Othniel Pratt, senior, was executed April 8, 1809, and it was set up and allowed on the 27th day of January, 1810. Othniel Pratt, junior, to whom the lands in controversy were devised, conveyed the same, by deed of warranty, to Samuel Ames and James Ames, to hold in fee simple; and they and their grantees, one of whom is the defendant, had been in possession to the date of the writ, viz., to March 5, 1852. Ames', and their grantees, must be regarded as holding in submission to the title of the remainder man, until the death of Othniel Pratt, junior, which occurred, as the case finds, in January, 1851, when the life estate in the premises was determined. Since that time, the tenant, or those under whom he claims, may be regarded as holding adversely and against the title of the reversioners.

Upon these facts, we contend, that if the tenant is entitled to betterments, it is only for such as have been put upon the premises since the passage of the Act of 1843, and since the death of said Othniel Pratt, junior.

In the case of *Austin* v. *Stevens,* the Court say, or decide, that the rights of the reversioner to improvements, made during the continuance of the life estate, cannot be altered or changed by the Legislature, after they have been fixed and established by the laws existing at the time when the life estate falls.

We contend, in this case, that it was not competent for the Legislature to change the rights and duties of the tenant for life, and the reversioners, nor any of the incidents attaching to the relation subsisting between the tenant for life and the reversioners, as existing by the laws in force at the time when that relation was created and commenced; and certainly the

Act of 1843 could not divest the reversioner of any rights which existed and were vested in him before or at the time of its passage. See *Austin* v. *Stevens,* just cited, and authorities cited by the counsel for plaintiff; also *Given* v. *Marr,* 27 Maine, 212.

If the foregoing proposition be correct, then nothing can be allowed the defendant for any improvements or betterments made before the passage of the Act, nor until the death of Othniel Pratt, junior, in whom was the life estate; but if the improvements made by the tenant for life, and those claiming under him, are not to be considered as attached absolutely to the estate until the death of the tenant for life, and so to belong to the tenant; and that by force of the statute of 1843 he is entitled to recover for them, then we ask the Court to look at the intention of the testator as expressed in his will.

For, again we say, that from the peculiar language of the devise, the right to betterments or compensation, for improvements during the existence of the life estate, is excluded. The language is, "I give and bequeath unto my son Othniel, the land he is now in possession of; also one half of the lot numbered five, on the north side of said lot, lying in Livermore, to him during his natural life, to improve, and then to his heirs after him for their sole right;" and it is upon these terms, and for improvement, that the devise is accepted. The lot being at the time of the devise wild land, the words "to improve," mean not only to cultivate, but include all which is necessary to do so, viz., the right to cut and clear the lot, and to fence the same, and also to erect and maintain such buildings as will protect and secure the fruits of any improvement. The fair construction of the will is, that the devisee is to have the fruits of the improvement during his life; and then the estate, as improved, is to go after the death of the tenant for life to his heirs; and it is upon these terms that the devise is accepted, and this Court cannot change them. But if the tenant for life, or those claiming under him, had held the estate six years after the life estate had fallen adversely, with

or without the aid of the statute of 1843, she would be entitled to betterments made during that time, as against the owner in fee, in the same manner as if there had never been any life estate resting on the premises.

*H. W. Paine*, in reply.

APPLETON, J.— The estate of Othniel Pratt, under the will of his father, as determined in *Pratt* v. *Leadbetter*, 38 Maine, 10, was for life only. Having then an estate for life, on March 25, 1812, he conveyed the demanded premises, by deed of warranty, to Samuel and James Ames, by whom, and by those claiming through them, they have been occupied to the present time.

The remainder man or reversioner, not having any right to the immediate possession of the land, cannot lose title by adverse possession. They either cannot, or if they can, are not bound to enter during the continuance of the particular estate, to defeat a wrongful possession. *Jackson* v. *Schoonmaker*, 4 Johns. 402; *Stevens* v. *Winship*, 1 Pick. 327. In accordance with common law are the statutory provisions in this respect. R. S., c. 91, § 10.

If the tenants are to be regarded as in under their title, so far as any was conveyed by the deed of Pratt, their estate would be that of tenants for life; and, as such, they would not, by the rules of the common law, be entitled to compensation for any improvements made by them.

To entitle the tenant to betterments under R. S., c. 145, § 23, his possession must be such, that if prolonged for a period of twenty years, it would, by disseizin, give him the fee. It must be open, notorious, exclusive and adverse. But, as the reversioner or remainder man had no right of entry, nor of possession, during the particular estate, the seizin of the tenant while that estate continued was not adverse to them. *Webster* v. *Howard*, 14 How. 489. As the tenant could gain no title to the fee by adverse possession, so neither could he acquire the lesser right of compensation for betterments.

By the Act of March 6, 1844, c. 6, § 1, the tenant for years

is authorized to recover betterments as against the owners of the expectant estate. But as the improvements made by the tenant for life before that time, enured to the benefit of the owner of the fee, and became his the instant they were perfected, the statute cannot affect any made before its passage, for they had become a part of the reversionary estate. *Austin* v. *Cooper*, 24 Maine, 520. If the tenants are to be viewed as disseizors, as they could not disseize those in remainder or reversion, so neither could they acquire by disseizin any claim for betterments. *Webster* v. *Cooper*, 14 How. 489. If they were in under their title as tenants for the life of Othniel Pratt, they were not holding adversely, and they could hold no betterments. *Treat* v. *Strickland*, 23 Maine, 234.

*Defendant defaulted.*

TENNEY, C. J., and RICE and GOODENOW, J. J., concurred.
CUTTING, J., did not sit.
MAY, J., having been of counsel, did not sit.